1
2
3
4
5
6
7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GRANDESIGN ADVERTISING FIRM, INC., | Case No.  3:20-cv-00719-LAB-DEB |
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2) [Dkt. 15]** |
| v. | |
| TALON US (GRANDESIGN) LLC and TALON OUTDOOR, LTD., | |
| Defendants. | |
| TALON US (GRANDESIGN) LLC, | |
| Counterclaimant and Third-Party Plaintiff, | |
| v. | |
| GRANDESIGN ADVERTISING FIRM, INC., and AARON GAEIR, | |
| Counterclaim Defendant and Third-Party Defendant. | |

26     Plaintiff Grandesign Advertising Firm, Inc. ("Grandesign") alleges that

27 Talon US (Grandesign) LLC ("Talon US") violated the Lanham Act by using

28 Grandesign's tradename and breached an Asset Purchase Agreement under

1    which Talon US acquired part of Grandesign's business. Grandesign names
2    Talon US's ultimate parent, Talon Outdoor, Ltd. ("Talon Outdoor"), a United
3    Kingdom entity headquartered in London, England, as a defendant, too.

4          Talon Outdoor has moved to dismiss the claims against it for lack of
5    personal jurisdiction. (Dkt. 15.) Grandesign opposes that Motion and argues
6    that, at a minimum, it should have an opportunity to conduct jurisdictional
7    discovery to determine whether Talon US is its foreign parent's alter ego.

8          Grandesign fails to make the necessary prima facie showing of general
9    jurisdiction under an alter ego theory, but it alleges enough to establish
10   specific jurisdiction. The Motion is **DENIED**. (Dkt. 15.)

11                                   **BACKGROUND**

12         Talon Outdoor, a United Kingdom limited company with its principal
13   place of business in London, sought to expand the operations of its family of
14   companies to the west coast of the United States. To accomplish that, it
15   directed one of its subsidiaries to form a new subsidiary, Talon US. The new
16   entity executed an asset purchase agreement with Grandesign, but payments
17   under that agreement came from Talon Outdoor and, when the final payment
18   came due, Grandesign received a notice sent by a Talon Outdoor executive
19   and directing questions to that executive.

20         Grandesign alleges that Talon Outdoor is liable under the APA since
21   Talon US is merely an alter ego of its parent. It contends that Talon Outdoor
22   is subject to the Court's personal jurisdiction on the same basis.

23                                   **DISCUSSION**

24         The burden of proving personal jurisdiction rests with the plaintiff.
25   *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). On a
26   motion to dismiss under Rule 12(b)(2), the plaintiff must make only a *prima*
27   *facie* showing of personal jurisdiction. *American Tel. & Yel. Co. v. Compagnie*
28   *Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

Courts may exercise either general or specific jurisdiction over a defendant. Under the former theory, a corporate defendant's connections must be "so continuous and systematic as to render it essentially at home in the forum state." *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1020 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011)). Specific jurisdiction, on the other hand, "requires that the defendant have certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice"—that is, "the defendant's suit-related conduct must create a substantial connection with the forum state." *Id.* at 1022-23 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945) and *Walden v. Fiore*, 571 U.S. 277, 284 (2014)).

Although Grandesign fails to establish that Talon Outdoor has continuous and systematic contacts with California, it makes the required *prima facie* showing that Talon Outdoor's suit-related conduct create a substantial connection with California. Accordingly, the Court can exercise specific personal jurisdiction over Talon Outdoor in this matter.

## I. Grandesign Fails to Make a *Prima Facie* Showing of General Jurisdiciton

Grandesign offers only one theory supporting general jurisdiction over Talon Outdoor: that Talon US, which is undisputedly subject to the Court's jurisdiction, is Talon Outdoor's alter ego. (Dkt. 29 at 9.) "The alter ego test is designed to determine whether the parent and subsidiary are not really separate entities, such that one entity's contacts with the forum state can be fairly attributed to the other." *Ranza v. Nike, Inc.,* 793 F.3d 1059, 1071 (9th Cir. 2015) (internal marks omitted). To establish that Talon Outdoor and Talon US "are not really separate entities" at this stage, Grandesign must make a *prima facie* showing "(1) that there is such a unity of interest and

ownership such that the separate personalities of the two entities no longer exist and (2) that failure to treat them as one would result in fraud or injustice." *Id.* at 1073 (marks omitted, quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (2001)).

The unity of interest of prong requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Id.* The parent must have "pervasive control . . . such as . . . [its] dictat[ion of] every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation." *Id.* The parent's mere involvement in day-to-day operations, as opposed to its control over or dictation of them, doesn't suffice to label the subsidiary an alter ego. *See id.* at 1073-74.

Grandesign's showing falls short of this standard. It alleges:

1) Talon Outdoor negotiated the APA and made payments under that agreement on Talon US's behalf, (Dkt. 1 ¶¶ 20, 28, 30);

2) Talon Outdoor, on its website, listed Talon US's offices as Talon Outdoor offices, (*id.* ¶ 21), and assigns its employees email addresses through Talon Outdoor's domain, talonoutdoor.com, (*id.* ¶ 29);

3) Talon US doesn't "keep minutes of major corporate decisions, ensur[e] proper capitalization, maintain[] the distinction between corporate assets and parent assets, and maintain[] separate bank accounts," with Talon US continuing to have no bank account through July 2019, (*id.* ¶¶ 22, 23);

4) Talon US "shadow-operated off of *Grandesign's* infrastructure," (*id.* ¶ 23 (emphasis added)), paying business expenses, payroll, and contractors through Grandesign's infrastructure and relying on Grandesign for insurance, (*id.* ¶¶ 23-25);

5) "Directives to Grandesign from Talon typically come from Talon Outdoor executives or employees, not Talon US," (*id.* ¶ 27);

6) Talon US and Talon Outdoor have substantial overlap in directors and management personnel, (*id.* ¶¶ 29-32);

7) That Talon Outdoor's CEO, Barry Cupples, directed Aaron Gaeir, Grandesign's former CEO and then Talon US's Chief Revenue Officer, to copy Cupples "on all mails to any colleagues at Talon on this side of the pond," that is, communications with Talon Outdoor;

8) That one of Talon US's managers "was surprised," five days after Gaeir's termination, that Talon US wouldn't be paying Gaeir the Final Earnout Payment in dispute in this case, and "stated that he was under the impression that the payment had to be made and had already been made," (*id.* ¶¶ 34, 36); and

9) Talon US "acted based on purported authorization from various sources,' including individuals purporting to hold titles with Talon US while also serving as executives of Talon Outdoor or other entities in the Talon family (*id.* ¶ 35).

But none of this amounts to pervasive control of Talon. The payment of large, extraordinary expenses is anything but a day-to-day operation. The sharing of a website, while suggestive of a close relationship, doesn't indicate control. Talon US's use of *Grandesign*'s infrastructure suggests that Talon US wasn't fully fleshed-out, but it speaks more to Grandesign's own leverage over Talon US than it does to Talon Outdoor's control.

That "[d]irectives to Grandesign from Talon" came from Talon Outdoor doesn't move the needle, either—were these "directives" in connection with Grandesign's duties to Talon US? Did they relate to the APA, or to day-to-day operations? Without more specificity, this vague allegation doesn't speak to the level of control that Talon Outdoor exerted over Talon US.

1   |   And even the allegation that Cupples wanted to be copied on
2   communications between Talon US and Talon Outdoor, while it reaches the
3   level of day-to-day, doesn't support a plausible inference that Talon Outdoor
4   controlled Talon US. To the contrary, that request is just as consistent with
5   the inference that Cupples sought to maintain control over Talon Outdoor's
6   relationship with a separate entity.

7   |   The Court's conclusion is confirmed by Talon Outdoor's affidavits.
8   Talon Outdoor "is not responsible for securing clients for [Talon US],"
9   (Dkt. 15-2 ¶ 13), it "does not share any bank accounts with [Talon US]" as of
10   August 2019, (*id.* ¶ 16), and it funded Talon US's operations through an
11   interest-bearing loan. (Dkt. 15-3 ¶ 3). Talon US, for its part, "makes its own
12   corporate decisions[,] . . .passes its own resolutions," and maintains separate
13   accounts and books. (Dkt. 15-4 ¶¶ 18-19.)

14   |   Grandesign must make a *prima facie* showing of Talon Outdoor's
15   *pervasive* control of Talon US, and it hasn't done so. The parent entity's
16   heavy involvement in the APA isn't enough to establish the level of day-to-
17   day control necessary to show that Talon US is a mere alter ego of Talon
18   Outdoor. Talon US's jurisdictional contacts can't be imputed to Talon Outdoor,
19   so the Court doesn't have general personal jurisdiction over that Defendant.

20   |   **II. Talon Outdoor Is Subject to the Court's Specific Personal**
21   **Jurisdiction**

22   |   While Grandesign's showing isn't enough to establish general
23   jurisdiction, it satisfies the standard for specific jurisdiction. A defendant is
24   subject to such jurisdiction where its "minimum contacts" with a forum suffice
25   to show that it would not "offend traditional notions of fair play and substantial
26   justice" for it to face claims against it in that forum. *Williams*, 851 F.3d at
27   1022.[1] "[T]he defendant's suit-related conduct must create a substantial

28

---

[1] Because the Court sits in California, its specific jurisdiction is limited by

1    connection with" California to be subject to suit here. *Id.* at 1022-23.

2    A connection to a California-based plaintiff isn't enough—the
3    jurisdictional inquiry must "focus[] on the relationship among the defendant,
4    the forum, and the litigation." *Walden*, 571 U.S. at 287. "The proper question
5    is not whether the plaintiff experienced a particular injury or effect but whether
6    the defendant's conduct connects him to the forum in a meaningful way." *Id.*
7    at 290. To exercise specific personal jurisdiction over an out-of-state
8    defendant, then, the Court must be satisfied that: "(1) the defendant either
9    purposefully directs its activities or purposefully avails itself of the benefits
10   afforded by the forum's laws; (2) the claim arises out of or relates to the
11   defendant's forum-related activities; and (3) the exercise of jurisdiction
12   comports with fair play and substantial justice." *Williams*, 851 F.3d at 10123
13   (internal marks removed).

14   Grandesign's Complaint successfully invokes the Court's jurisdiction
15   under this theory. Talon Outdoor purposefully directed its activities to
16   California, "expand[ing] its U.S. coverage" by purchasing assets from
17   Grandesign, a California business. (Dkt. 1 ¶ 20 (quoting Talon Outdoor press
18   release).) Its executives negotiated the APA, with Talon Outdoor Chairman
19   and co-founder Eric Newnham signing the APA as a Manager of Talon US.
20   (*Id.* ¶¶ 9, 10, 28; Dkt. 1-2 at 46.) It then made payments to Grandesign under
21   the APA on Talon US's behalf, and when the Earn-Out Payment at issue in
22   this case came due, a Talon Outdoor executive with no apparent relationship
23   to Talon US transmitted a notice to Gaeir stating that he would not be
24   receiving the Earn-Out Payment. (*Id.* ¶ 31.) The notice informed him, too, that
25   any questions should be directed to the same Talon Outdoor executive.

26   ——————————
27   California's long-arm statute, too. But that statute permits the exercise of
     jurisdiction to the limits of due process, so the analyses for personal
28   jurisdiction under state law and federal due process are the same. Cal. Code
     Civ. Proc. § 410.10; *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110.

1   (Dkt. 1-5 at 3.) Five days later, one of Talon US's two Managers expressed
2   surprise when he learned that Gaeir didn't receive payment, stating that he
3   believed that the payment had been made. (Dkt. 1 ¶ 34.)

4       These allegations—which aren't contradicted by the affidavits Talon
5   Outdoor offers—establish a plausible inference that Talon Outdoor, not Talon
6   US, made the decision that Gaeir wouldn't be paid. Accordingly, Gaeir's
7   claims arise out of Talon Outdoor's forum-related activities.

8       Finally, the Court finds that the exercise of jurisdiction over Talon
9   Outdoor comports with fair play and substantial justice. Under this prong, the
10  Court must consider seven factors: "(1) the extent of the defendants'
11  purposeful injection into the forum state's affairs; (2) the burden on the
12  defendant of defending in the forum; (3) the extent of conflict with the
13  sovereignty of the defendant's state; (4) the forum state's interest in
14  adjudicating the dispute; (5) the most efficient judicial resolution of the
15  controversy; (6) the importance of the forum to the plaintiff's interest in
16  convenient and effective relief; and (7) the existence of an alternative forum."
17  *Dole Food*, 303 F.3d at 1114 (9th Cir. 2002).

18      As to the first factor, the extent of Talon Outdoor's purposeful direction
19  of its activities toward California supports the conclusion that it has sufficiently
20  purposefully injected itself into California's affairs. *See id.* at 1114-15 (noting
21  overlap between "purposeful injection" and "purposeful availment
22  requirement.")

23      For the second, it would be burdensome to require Talon Outdoor, a
24  UK entity, to defend against a suit in California. But the Ninth Circuit
25  recognizes that "[m]odern advances in communications and transportation
26  have significantly reduced the burden of litigating in another country," and
27  that English-speaking defendants face lesser burdens than they otherwise
28  would. *Id.* at 1115. Talon Outdoor's affidavits and the other exhibits submitted

1  in support of this motion satisfy the Court that the relevant executives are
2  fluent in English. The second factor weighs against a finding of fair play and
3  substantial justice, but not heavily.

4      Third, any conflict with the sovereignty of the United Kingdom (beyond
5  the minor conflict that necessarily occurs when a foreign national faces
6  litigation in an American court) isn't apparent here, so this factor, too, weighs
7  only weakly against a finding of fair play and substantial justice.

8      Fourth is California's interest in adjudicating this dispute. Grandesign
9  has its principal place of business in California and the assets it sold remain
10 in California. (Dkt. 1 ¶¶ 1, 5.) California has a strong interest in providing a
11 forum for its residents. *See Dole Food*, 303 F.3d at 1115-16 (citing *Panavision*
12 *Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1323 (9th Cir. 1998).

13     The fifth factor, efficient resolution, focuses on the location of the
14 evidence and witnesses. *Panavision*, 141 F.3d at 1323. Even in 1998, "[i]t
15 [was] no longer weighed heavily given the modern advances in
16 communication and transportation." *Id.* This factor favors California, as well.
17 The presence of Grandesign and Talon US offices, the purchased assets,
18 and Gaeir in San Diego indicates that the case's center of gravity is here,
19 rather than in the United Kingdom.

20     Sixth, litigation in California is important to Grandesign's ability to obtain
21 convenient and effective relief because doing so permits Grandesign to
22 litigate its claims against both Talon entities in a single lawsuit in a single
23 country. While this factor is "not of paramount importance," it favors the
24 Court's exercise of jurisdiction over Talon Outdoor. *Dole*, 303 F.d3 at 1116.

25     Seventh and finally, "whether another reasonable forum exists
26 becomes an issue only when the forum state is shown to be unreasonable."
27 *Sinatra v. National Enquirer, Inc.*, 854 F.2d 1191, 1201 (9th Cir. 1988).
28 Because this forum hasn't been shown to be unreasonable, this factor is not

relevant here.

Balancing these factors, the Court finds that exercise of jurisdiction over Talon Outdoor comports with fair play and substantial justice.

## CONCLUSION

Because (1) Talon Outdoor purposefully directed its activities toward California, (2) the suit arises out of Talon Outdoor's contacts with California, and (3) exercise of jurisdiction over Talon Outdoor comports with fair play and substantial justice, the motion to dismiss for lack of personal jurisdiction is **DENIED**.

The Court's finding that the Complaint fails to adequately allege alter ego ultimately may result in dismissal of Grandesign's claim against Talon Outdoor relying the related theory of veil piercing. While serial motions to dismiss are disfavored, Talon Outdoor may brief this issue via motion to dismiss under Rule 12(b)(6) filed within 14 days of this Order.

Dated: March 24, 2021

**Hon. Larry Alan Burns**
United States District Judge